1  HARTMAN LAW OFFICE, INC.
   Jared M. Hartman (#254860)
2  jared@sandiegoconsumerattorneys.com
   400 S. Melrose Drive, Suite 209
3  Vista, CA 92081
   Telephone: (951) 293-4187; Fax: (888) 819-8230
4
   Attorney for Plaintiff
5  ROSIE SEMNAR

6                    **U.S. DISTRICT COURT**

       **CENTRAL DISTRICT OF CALIFORNIA—EASTERN DIVISION**
7

8  | ROSIE SEMNAR, an individual, | Case No.: |
   |---|---|
9  | Plaintiff, | **COMPLAINT AND DEMAND FOR JURY TRIAL FOR VIOLATIONS OF:** |
10 | v. | |
11 | FIRST GUARANTY MORTGAGE CORPORATION, | **1. TRUTH IN LENDING ACT,**<br>**2. CALIFORNIA CONSUMER CREDIT REPORTING AGENCIES ACT** |
12 | Defendant. | |
13 | | |

14      Plaintiff, ROSIE SEMNAR, an Individual, by and through her attorneys of

15 record, hereby complains and alleges as follows:

16                    **<u>INTRODUCTION</u>**

17      1.      Plaintiff, by and through her attorneys of record, bring this action to secure

18 redress from unlawful debt collection practices engaged in by Defendant FIRST

19 GUARANTY MORTGAGE CORPORATION (hereinafter "Defendant FIRST

20 GUARANTY") in violation of the Federal Truth In Lending Act (hereinafter "TILA");

21 as well as the California Consumer Credit Reporting Agencies Act (hereinafter

                              1
                         **COMPLAINT**

"CCCRAA").

2.     The TILA promotes consumers' informed use of credit by requiring meaningful disclosure of credit terms, and it states as follows: "It is the purpose of this title [15 USCS §§ 1601 et seq.] to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices."   15 U.S.C. § 1601(a).

3.     The TILA is a federal remedial statute that requires strict compliance, is to be liberally interpreted in favor of the consumer, and applies to an individual or business that offers or extends credit when four conditions are met: (i) the credit is offered or extended to consumers; (ii) the offering or extension of credit is done regularly; (iii) the credit is subject to a finance charge or is payable by a written agreement in more than four installments; and (iv) the credit is primarily for personal, family, or household purposes. 12 C.F.R. § 226.1(c).

4.     In California Civil Code § 1785.1(a)-(g), the California Legislature made the following findings and purpose in creating the CCCRAA:

(a) An elaborate mechanism has been developed for investigating and evaluating the credit worthiness, credit standing, credit capacity, and general reputation of consumers.

(b) Consumer credit reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers.

(c) There is a need to insure that consumer credit reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy.

(d) It is the purpose of this title to require that consumer credit reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, hiring of a dwelling unit, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this title.

(e) The Legislature hereby intends to regulate consumer credit reporting agencies pursuant to this title in a manner which will best protect the interests of the people of the State of California.

(f) The extension of credit is a privilege and not a right. Nothing in this title shall preclude a creditor from denying credit to any applicant providing such denial is based on factors not inconsistent with present law.

(g) Any clauses in contracts which prohibit any action required by this title are not in the public interest and shall be considered unenforceable. This shall not invalidate the other terms of such a contract.

## JURISDICTION AND VENUE

4.      This action arises out of Defendant FIRST GUARANTY's violations of the TILA, over which the U.S. District Court has original subject matter jurisdiction pursuant to 15 U.S.C. § 1640(e); as well as supplemental jurisdiction over the State law causes of action pursuant to 28 U.S.C. § 1367(a).

5.      Because Defendant FIRST GUARANTY regularly conducts business within the State of California by owning and issuing home mortgage loans for California residents, and maintains a registered agent for service of process at National

3
**COMPLAINT**

Registered Agents, Inc.; 818 West Seventh Street, Suite 930; City of Los Angeles, personal jurisdiction is established.

6.     Venue in this District is proper pursuant to 28 U.S.C. § 1391 for the following reasons: (i) Plaintiff resides in the County of Riverside, State of California, which is within this judicial district; (ii) the real property subject of the matter is located within the County of Riverside; (iii) the conduct complained of herein occurred within this judicial district; and, (iv) Defendant has conducted business within this judicial district at all times relevant.

## FACTUAL ALLEGATIONS

7.     On December 27, 2013, Plaintiff entered into a home loan agreement with Mann Mortgage, LLC as the lender.

8.     On December 28, 2013, Plaintiff signed a document called "Escrow Waiver" that specifically states, "Mann Mortgage, LLC ("Lender") hereby waives its normal requirement providing for the escrow of, among other things, and to the extent applicable, ***taxes***, ***insurance***, ground rents and assessments" (emphasis added).

9.     Moreover, the document called "Settlement Statement" that is attached to and incorporated into the home loan agreement specifically checks off the box that reads, "You do not have monthly escrow payment for items such as property taxes and homeowner's insurance.  You must pay these items directly yourself."

10.     The lender of the loan (Mann Mortgage, LLC) has never required Plaintiff to provide receipts evidencing such payments have been made.

11.     The home loan agreement called for Plaintiff to make monthly payments in the amount of $1,764.14, beginning on February 1, 2014.

12.     At some point after execution of the loan agreement, the loan was sold to Defendant FIRST GUARANTY as the new lender.

13.     At all times relevant herein, Defendant FIRST GUARANTY has been the lender and owner of Plaintiff's home mortgage loan for her family's primary residence in the City of Temecula, County of Riverside, State of California.

14.     Upon information and belief, no terms and conditions of the December 28, 2013 home loan agreement between Plaintiff and Mann Mortgage were changed upon the sale of the loan from Mann Mortgage to Defendant FIRST GUARANTY.

15.     The mortgage loans that Defendant FIRST GUARANTY offers and extends to consumers are for household purposes, so that the consumers may have a residence to live in and own after repaying the mortgage loan.

16.     Defendant FIRST GUARANTY offers and extends home mortgage loans on a regular basis, as that is its primary business operation.

17.     The mortgage loan that Plaintiff has with Defendant FIRST GUARANTY is subject to finance charges, costs, and fees; and is payable in more than four installments since the agreement calls for Plaintiff to make monthly payments until the maturity date of January 1, 2044 (thirty years after loan execution).

18.     Roundpoint Mortgage Servicing Corporation (hereinafter "Roundpoint") was retained by Defendant FIRST GUARANTY to act as the servicer of the home

5
**COMPLAINT**

1    mortgage loan in order to collect the monthly payments due upon the loan.

2        19.    At all times relevant herein, Roundpoint has been acting as the agent of

3    Defendant FIRST GUARANTY, and has been acting on behalf of, at the direction of,

4    and in association with Defendant FIRST GUARANTY.

5        20.    Consequently, as the principal, Defendant FIRST GUARANTY is liable

6    for the wrongful acts committed by its agent Roundpoint, and is also liable for

7    Roundpoint's willful omission to fulfill the obligations of its principal.

8        21.    Plaintiff and Roundpoint are presently engaged in litigation over

9    Roundpoint's abusive, oppressive, and unfair conduct in the way it has been handling

10   Plaintiff's home mortgage loan.

11       22.    That litigation is proceeding within the Superior Court for the State of

12   California, County of Riverside, in case number RIC1503950.

13       23.    Pursuant to "Regulation Z" of the TILA (12 C.F.R. § 1026.41), Defendant

14   FIRST GUARANTY has been obligated at all times to provide to Plaintiff a periodic

15   statement for each billing cycle every month containing information on payments

16   currently due and previously made, fees imposed, transaction activity, application of

17   past payments, contact information for the servicer, and, where applicable, information

18   regarding delinquencies.

19       24.    Pursuant to its authority under 15 U.S.C. § 1604(a), the Board of

20   Governors of the Federal Reserve System issued Regulation Z.

21       25.    In interpreting the TILA and implementing Regulation Z of Federal

6
**COMPLAINT**

1  Reserve Board, opinions by the Board of Governors of the Federal Reserve System staff

2  construing the TILA or Regulation Z should be dispositive unless they are

3  demonstrably irrational, as the TILA is best construed by those who give it substance in

4  promulgating regulations under it, and Congress having specifically designated the

5  Board and its staff as the primary source for interpretation and application of truth in

6  lending law. *Ford Motor Credit Co. v Milhollin* (1980) 444 US 555, 63 L Ed 2d 22,

7  100 S Ct 790.

8       26.    Part of Plaintiff's claims against Roundpoint is that Roundpoint contacted

9  Plaintiff directly in an attempt to collect the mortgage loan—despite being placed on

10  written notice by the undersigned counsel of his representation of Plaintiff—and that

11  the collection attempts by Roundpoint went beyond the requirements of TILA because

12  Roundpoint's written communications to Plaintiff directly in December of 2014

13  included payment instructions, a payment coupon to be sent in along with payment, and

14  an unequivocal statement that the correspondence was an attempt to collect a debt.

15       27.    However, neither Defendant FIRST GUARANY nor Roundpoint sent to

16  Plaintiff the statements required under Regulation Z for the months of January to June

17  2015.

18       28.    Plaintiff has since received a Regulation Z statement dated July 16, 2015,

19  but the only Regulation Z statement that Plaintiff received prior to that statement was in

20  December 2014.

21       29.    Plaintiff desires to re-finance her home loan due to on-going abusive,

**COMPLAINT**

1  unfair, and oppressive conduct by Roundpoint in its servicing of her mortgage loan.

2      30.   Sometime in late March or early April 2015, Plaintiff had a telephone

3  conversation with Defendant's agent—Roundpoint—regarding Roundpoint's failure to

4  send the required periodic statements to Plaintiff.

5      31.   Roundpoint claimed it is their policy that, since Plaintiff and Roundpoint

6  are in active litigation with each other, Roundpoint will not communicate with Plaintiff

7  at all.

8      32.   As such, Roundpoint, acting on behalf of, with consent of, or under the

9  direction of FIRST GUARANTY, refused to provide to Plaintiff during the months of

10  January to June 2015 the required Regulation Z statements that contain the current

11  payment amount due, information on previous payments made, fees imposed, or the

12  payoff amount of the loan.

13      33.   Roundpoint could have, but failed, to even send the statements to

14  Plaintiff's attorney of record.

15      34.   In fact, the July 2015 statement was sent to Plaintiff's attorney of record in

16  "c/o" Plaintiff.

17      35.   Based on the above, it is clear that Roundpoint's violations were

18  intentional, knowing, and deliberate, and were not unintentional violations born out of a

19  bona fide error.

20      36.   Because the violation was brought to Roundpoint's attention by Plaintiff's

21  telephone call in late March or early April 2015, and Roundpoint failed to deliver a

**COMPLAINT**

1  periodic statement to Plaintiff until July 16, 2015, Roundpoint therefore failed to correct

2  the violation within 60 days of being notified of the same.

3    37.    Because Plaintiff was not provided with the required statements for the

4  months of January to June 2015, Plaintiff was completely ignorant of how much she

5  actually owed every month.

6    38.    As such, in January to June of 2015, Plaintiff paid the required monthly

7  payment as called for by the loan agreement every month.

8    39.    On behalf of, at the direction of, and in association with Defendant FIRST

9  GUARANTY, Roundpoint has submitted to the consumer credit reporting agencies in

10  February 2015 and every month thereafter that Plaintiff was in default upon her

11  payments in January 2015 and every month thereafter.

12    40.    Roundpoint's credit reporting creates the misleading impression that

13  Plaintiff is in default upon her monthly payments, when in reality she was ignorant as to

14  the exact amount owed each of those months since Roundpoint and Defendant failed to

15  send her that required information every month from January to June 2015.

16    41.    As a result, Plaintiff's credit score has dropped approximately 100 points.

17    42.    Plaintiff is a 38-year old Deputy District Attorney for the County of

18  Riverside and is the mother of two daughters—ages 3 and 4.

19    43.    Plaintiff's job obligations as a trial attorney for the D.A.'s Office require

20  her to carry a heavy caseload on any given day.

21    44.    Because of the refusal by Roundpoint to provide the required periodic

9

**COMPLAINT**

1    statements to Plaintiff, Plaintiff was unable to even discuss with another home

2    mortgage lender during the months of January to June 2015 the details needed for

3    Plaintiff to secure a re-financing of the loan with a different lender.

4        45.    Defendant's violations have caused undue mental anguish and stress upon

5    Plaintiff, in that she has suffered anxiety, nervousness, humiliation, loss of sleep,

6    arguments within her marriage, inability to focus at work, fear over her daughters losing

7    their home, and feelings of despair and hopelessness due to her being held hostage by

8    Defendant and Roundpoint since she was not able to even begin to discuss with a new

9    lender the details needed for refinancing.

## FIRST CAUSE OF ACTION
### (VIOLATIONS OF TILA)

12       46.    Plaintiff re-alleges and incorporates by reference the above paragraphs, as

13   though set forth fully herein.

14       47.    By Roundpoint willfully, deliberately, and intentionally refusing to send

15   required periodic statements under Regulation Z, Defendant FIRST GUARANTY has

16   vicarious liability for each monthly violation from January 2015 to June 2015, which

17   violations continue to occur.

18       48.    Pursuant to 15 U.S.C. § 1640(a)(1)-(4), Plaintiff is entitled to actual

19   damages, statutory damages of not less than $400.00 and not greater than $4,000.00,  as

20   well as attorneys' fees and costs for pursuing prosecution.

21       49.    The civil penalty provision of 15 U.S.C. § 1640 applies to a creditor's

1    failure to abide by regulations promulgated by the Federal Reserve Board. *Mourning v.*

2    *Family Publications Serv.* (1973) 411 U.S. 356, 36 L. Ed. 2d 318, 93 S. Ct. 1652.

3       50.    As a result of these violations, Plaintiff has suffered actual damages by

4    way of emotional distress as described in the factual allegations above and for a

5    significant drop in her consumer credit score since she has been ignorant of exactly how

6    much to pay every month.

7

8                     **SECOND CAUSE OF ACTION**
      **(CALIFORNIA CONSUMER CREDIT REPORTING AGENCIES ACT)**

9

10       51.    Plaintiff repeats, re-alleges, and incorporates by reference, all other

11    paragraphs as if fully stated herein.

12       52.    As the furnisher of information to credit reporting agencies, Roundpoint is

13    and always was obligated to not furnish information on a specific transaction or

14    experience to any consumer credit reporting agency if they knew or should have known

15    the information was incomplete or inaccurate, as required by Calif. Civ. Code §

16    1785.25(a) of the California CCRA.

17       53.    Because Roundpoint was at all times herein acting on behalf of, at the

18    direction of, and in association with Defendant FIRST GUARANTY, then

19    Roundpoint's violations of the same flow through to Defendant FIRST GUARANTY as

20    the principal.

21       54.    Because Roundpoint has reported to the consumer credit reporting

agencies every month since February 2015 to the present date the misleading information that Plaintiff was in default on her loan obligation during the months of January to the present date, when in reality she was ignorant as to the exact amount owed each month since Roundpoint and Defendant failed to send her that required information every month from January to June 2015, Defendant has thereby violated its obligations under Calif. Civ. Code § 1785.25(a).

55.    These violations are continuing to occur.

56.    Even if Defendant's derogatory reporting is technically accurate, it is still a violation of this law if the derogatory reporting is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions. *Cisneros v. U.D. Registry, Inc.* (1995) 39 Cal. App. 4th 548.

57.    As a result of these violations, Plaintiff has suffered actual damages by way of emotional distress identified within the factual allegations above, as well as by a significant drop in her consumer credit score.

58.    Pursuant to Calif. Civ. Code § 1785.31, Plaintiff is therefore entitled to an award of actual damages, statutory damages of $100.00 to $5,000.00 for every willful violation, injunctive relief, as well as attorneys' fees and costs for pursuing prosecution of these violations.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that judgment be entered against each Defendant, and Plaintiff be awarded damages from Defendant as follows:

**COMPLAINT**

1    • An award of actual damages subject to proof at jury trial;

2    • An award of statutory damages as identified in each cause of action above;

3    • Injunctive relief to remove the derogatory information posted upon

4    Plaintiff's consumer credit reports;

5    • An award of attorney's fees incurred in pursuing the instant prosecution;

6    and

7    • An award of costs incurred in pursuing the instant prosecution.

8    Pursuant to the seventh amendment to the Constitution of the United States of

9    America, Plaintiff is entitled to, and demands, a trial by jury.

10   Dated: July 27, 2015                        Respectfully submitted,

11                                               HARTMAN LAW OFFICE, INC.

12                                        By:    /s/ Jared M. Hartman_____
                                                 Jared M. Hartman, Esq.
13                                               Attorney for Plaintiff

14

15

16

17

18

19

20

21

**COMPLAINT**